CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 17, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JENNIE MARIE CARRICO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00747 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SUPERINTENDENT | ) | |
| KIMBERLY HAUG,[1] *et al.*, | ) | By:    Hon. Thomas T. Cullen |
| | ) |           United States District Judge |
| Defendants. | ) | |

Plaintiff Jennie Marie Carrico, a Virginia pretrial detainee proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Kimberly Haug, Daniel O'Dell, Tiffany Payne, Julie Colley, and L. Coen. (*See* Compl. [ECF Nos. 1, 9].)[2] This matter is before the court on Haug, O'Dell, Payne, and Colley (the "Moving Defendants")'s motion to dismiss. (ECF No. 19.) For the following reasons, the court will grant the motion.

## I.    BACKGROUND

This matter stems from events that allegedly occurred while Carrico was a pretrial detainee at the New River Valley Regional Jail (the "jail") in Dublin, Virginia. (Compl. at 2 [ECF No. 1].) Carrico makes the following factual allegations in her complaint, which the court accepts as true when analyzing the motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

---

[1] Carrico identified this Defendant as Kimberly *Hagg* (*see* ECF No. 1 at 1), but this Defendant refers to herself as Kimberly *Haug* (*see* ECF No. 20 at 1). The court adopts that spelling, and the clerk shall update the docket accordingly.

[2] Carrico's complaint comprises two filings: ECF Nos. 1 and 9. But the latter filing only concerns allegations against Coen, who did not join in the motion to dismiss and instead intends "to file a motion for summary judgment at a later date and/or pursuant to any future order" of the court. (ECF No. 20 at 1 n.1.) Therefore, for simplicity's sake and to avoid confusion, all references in this Opinion to the "complaint" refer to ECF No. 1.

Carrico suffers from certain mental health issues, including night terrors, insomnia, "flashbacks," "severe" post-traumatic stress disorder, depression, anxiety, and panic attacks. (*See* ECF No. 1-1.) In July 2025, Carrico began submitting written requests to officials at the jail seeking mental health treatment. (Compl. at 6.) Carrico alleges that Colley, a mental health specialist at the jail, "signed off" on several of Carrico's requests, and stated that Carrico "would be seen by the order [in] which [her] requests were received." (*Id.* at 4,6.) In response to Carrico's August 8, 2025 request, Colley informed Carrico that she would have to wait a minimum of six weeks to receive mental health treatment and that "putting in repeated requests would not change or speed up the process." (*Id.* at 6.) Colley "never signed off on any" of Carrico's requests after August 8th, "even though [Colley] works in the mental health profession." (*Id.*)

According to Carrico, a "notice" is available to inmates at the jail stating that "there is a waiting time to be seen by mental health [professionals]." (*Id.* at 6–7.) Carrico requested a copy of the notice, but did not receive it. (*Id.* at 7.) Carrico's request "came back not scanned but signed off" on by Payne, a "hearing/trust officer" at the jail. (*Id.* at 4, 7.) The request was also labelled "Duplicate." (*Id.* at 7.) Payne also "signed off" on other requests, but these did not "come back with 'scanned' stamped on them."[3] (*Id.*) And certain of Carrico's other requests were marked "Mental Health" but were "signed off on by [] Payne," even though Payne is not "a mental health professional." (*Id.*) Carrico alleges that, on August 11, 2025, Payne came into Carrico's housing unit and "threaten[ed] [Carrico] with harassment charges if [she] sent in any more requests asking for mental health services." (*Id.*) Payne also told

---

[3] According to Carrico, these requests were not scanned, meaning they were not included in her "inmate profile." (ECF No. 1 at 7.)

Carrico that submitting more requests would "piss them off" and that "they" accordingly "wouldn't see [Carrico]." (*Id.*)

On August 2, 2025, Carrico submitted an inmate request stating that she "would like to file a grievance for mental health." (ECF No. 1-1 at 2.) Carrico received a response to her request from Major O'Dell. (*Id.*; Compl. at 5.) O'Dell's response to Carrico's grievance was marked "scanned," but O'Dell "did not approve or deny" Carrico's request for mental health treatment. (Compl. at 5–6.) Instead, O'Dell responded by stating that Carrico "was on the waiting list to be seen by mental health." (*Id.* at 6.)

Haug is the jail's superintendent. (*Id.* at 5.) According to Carrico, Haug has failed to employ "the adequate number of mental health professionals to address the needs of [the] over 600 inmates that are housed" at the jail. (*Id.*) Carrico alleges that her "mental health is crumbling because [her] cries for help are not being acknowledged . . . in a timely manner" and that jail officials are not considering the "severity of [her] symptoms." (*Id.* at 8.)

On February 23, 2026, the Moving Defendants filed their motion to dismiss. (ECF No. 19.) They argue that Carrico failed to state a claim upon which relief can be granted and that they are also entitled to qualified immunity. (*Id.*) Carrico was provided notice of her right to respond in opposition, *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (ECF No. 22), but has not filed a timely response. The motion is accordingly ripe for disposition.

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III.    ANALYSIS

Carrico asserts a variety of claims against the Moving Defendants. The court addresses each of these claims in turn.

#### A. HIPAA Violations

Carrico asserts a claim based on alleged violation(s) of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (Compl. at 5.) But this claim fails as a matter of law. Although HIPAA "prohibits the wrongful disclosure of . . . individually identifiable health information[,] . . . the statute does not . . . provide a private right of action for any citizen." *Burkey v. Balt. Cnty.*, No. GJH-20-2006, 2021 WL 3857814, at *11 (D. Md. Aug. 30, 2021). Accordingly, Carrico's HIPAA claim(s) will be dismissed.

## B. Official Capacity Claims

Carrico sues Haug and Payne in their individual and official capacities. (*See* Compl. at 3–4.) An action against a public employee in his or her official capacity is a suit against the individual's public employer.[4] *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). In asserting an official-capacity claim, a plaintiff may not succeed on a theory of *respondeat superior*. *Riddick v. Watson*, 503 F. Supp. 3d 399, 416 (E.D. Va. 2020). Instead, a plaintiff must show that the public entity's official policy or custom caused the plaintiff's constitutional injury. *Id.* An official policy or custom can arise in the following four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the right of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). To survive a motion to dismiss, a plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Allen v. Good*, No. 7:22-cv-00351, 2023 WL 5984287, at *6 (W.D. Va. Sept. 14, 2023) (quoting *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022)). "It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle*, 326 F.3d at 473.

Carrico does not identify any express policy or decision by a final policymaking authority that caused her alleged constitutional injuries. She also does not properly allege that

---

[4] Haug and Payne are both employees of the New River Valley Regional Jail Authority, the entity that operates the jail. *See Shumate v. Crawford*, No. 7:23-cv-00199, 2025 WL 618867, at *2 (W.D. Va. Feb. 26, 2025).

her injuries were caused by an omission manifesting deliberate indifference or a practice that is so widespread as to constitute a custom with the force of law.[5] Accordingly, Carrico's official-capacity claims against Haug and Payne will be dismissed.

## C. Haug

Carrico asserts an individual capacity claim against Haug based on her alleged failure "to employ[] [an] adequate number of mental health professionals to address the needs of [the] over 600 inmates" housed at the jail. (ECF No. 1 at 5.) As noted, a government official like Haug cannot be held liable under § 1983 based on a theory of *respondeat superior. Iqbal*, 556 U.S. at 676. Instead, to state a claim against Haug, Carrico must show that Haug, "through [her] own individual actions, has violated the Constitution." *Id.* To state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wall v. Clarke*, No. 7:19-cv-00260, 2021 WL 5444754, at *4 (W.D. Va. Nov. 22, 2021) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the

---

[5] Liberally construed, Carrico's complaint could be read to claim that the jail's informal policy of providing mental health treatment to inmates in the order in which they submit requests constitutes an official policy that caused her alleged injuries. But as discussed in more detail below, she does not allege sufficient facts to show that this apparent policy caused any constitutional violation.

subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). With respect to the second element, "a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799.

Carrico's complaint lacks sufficient factual allegations to support a supervisor liability claim against Haug. Carrico does not plausibly allege that Haug had actual or constructive knowledge that her subordinates were engaging in conduct that posed a pervasive risk of constitutional injury, or that Haug continuously failed to act in the face of "documented widespread abuses." *Montgomery*, 751 F.3d at 226. At bottom, Carrico's "assertions against [Haug] do not state a cognizable claim of supervisor liability under § 1983." *Carter v. Ely*, No. 7:20-cv-00713, 2022 WL 801585, at *4 (W.D. Va. Mar. 15, 2022). Accordingly, Carrico's claim against Haug in her individual capacity will be dismissed.

### D. O'Dell

Carrico asserts a claim against Major O'Dell based on his alleged failure to process one of Carrico's grievance requests. (Compl. at 5–6.) In support, Carrico alleges that she submitted an inmate request stating that she "would like to file a grievance for mental health." (ECF No. 1-1 at 2.) Carrico received a response from O'Dell which was marked "scanned," but O'Dell "did not approve or deny" Carrico's request for mental health treatment. (Compl. at 5–6.) Instead, O'Dell responded by stating that Carrico "was on the waiting list to be seen by mental health." (*Id.* at 6.)

As the Fourth Circuit has made clear, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Thus, "[a]n inmate . . . cannot bring a § 1983 claim alleging denial of a specific grievance process." *Id.* As Carrico had no constitutional right to file any grievance, O'Dell's alleged failure to process such a grievance did not amount to a constitutional violation.[6] Accordingly, Carrico's claim against O'Dell will be dismissed.

### E. Colley

Carrico asserts what the court understands to be a deliberate-indifference claim against Colley. As noted, Carrico alleges that she began submitting written requests for mental health treatment in July 2025. (Compl. at 6.) She further alleges that Colley "signed off" on several of these requests and stated that Carrico "would be seen by the order of which [her] requests were received." (*Id.*) In response to Carrico's August 8, 2025 request, Colley informed Carrico that she would have to wait a minimum of six weeks to receive mental health treatment and that "putting in repeated requests would not change or speed up the process." (*Id.*) Carrico further alleges that Colley "never signed off on any" of Carrico's requests after August 8th, "even though [Colley] works in the mental health profession." (*Id.*)

As Carrico was a pretrial detainee when the events at issue allegedly occurred, her deliberate indifference claim against Colley arises under the Fourteenth Amendment. *See Lynch v. Hill*, No. 7:25-cv-00753, 2026 WL 1046595, at *4 (W.D. Va. Apr. 17, 2026). To state a deliberate-indifference claim under the Fourteenth Amendment, a plaintiff must allege:

> (1) [she] had a medical condition or injury that posed a substantial
> risk of serious harm; (2) the defendant intentionally, knowingly,

---

[6] The failure to process a grievance request, however, may result in a grievance process being unavailable to an inmate such that exhaustion is not required under the PLRA.

> or recklessly acted or failed to act to appropriately address the
> risk that the condition posed; (3) the defendant knew or should
> have known (a) that the detainee had that condition and (b) that
> the defendant's actions or inaction posed an unjustifiably high
> risk of harm; and (4) as a result, the detainee was harmed.

*Id.* (quoting *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023)).

Even if her mental health conditions posed a substantial risk of serious harm, Carrico

has not presented sufficient facts to state a deliberate indifference claim against Colley. Carrico

does not show that Colley failed to act to appropriately address Carrico's mental health

conditions. On the contrary, Carrico's own allegations show that Colley processed Carrico's

initial requests and stated that she would be seen for mental health treatment in due course.

Colley also responded to Carrico's subsequent requests by stating that repeated requests would

not "speed up" the process of getting Carrico her desired mental health treatment. Without

more, the court cannot conclude that Colley's "action or inaction was . . . 'objectively

unreasonable,'" as is required to state a Fourteenth Amendment deliberate-indifference claim.

*Short*, 87 F.4th at 611. And although Carrico may have disagreed with any decision as to when

she would be seen for mental health treatment, such disagreement does not suffice to state a

deliberate indifference claim. *See Wheeler v. Greear*, No. 7:25-cv-00286, 2025 WL 2111096, at *2

(W.D. Va. July 28, 2025) (noting that a pretrial detainee's "mere disagreement with medical

treatment decisions . . . are insufficient to support a claim under Section 1983.") Accordingly,

Carrico's claim against Colley will be dismissed.

### F. Payne

As for Payne, Carrico takes issue with how the officer responded to some of Carrico's

written requests. (*See* Compl. at 6–7.) In particular, Carrico complains that Payne "signed off"

on certain of Carrico's requests even though Payne "is not in the mental health profession."

(*Id.* at 7.) Carrico also alleges that, on August 11, 2025, Payne "threat[ed] [Carrico] with harassment charges if [she] sent in any more requests asking for mental health services." (*Id.*) Payne allegedly told Carrico that submitting more requests would "piss them off" and that "they" accordingly "wouldn't see [Carrico]." (*Id.*)

As discussed, Carrico's complaints as to how Payne responded to Carrico's requests do not suffice to state a constitutional claim. *See Booker*, 855 F.3d at 541; *Joyce v. Byers*, No. 7:10-cv-00375, 2010 WL 3785946, at *3 (W.D. Va. Sept. 28, 2010) ("[Plaintiff's] allegations concerning her dissatisfaction with the manner in which defendants responded to her request forms and grievances does not state a constitutional claim, since inmates have no constitutional right to a grievance procedure." (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Moreover, as the Moving Defendants note, "Colley—the [jail's] mental health professional—had signed off on substantially similar request forms." (ECF No. 20 at 9; *see also* ECF No. 1-1 at 1, 5.) And in her responses to Carrico's requests, Payne noted that the requests were "duplicate[s]" (ECF No. 1-1 at 3, 6–7), which suggests that Payne knew that Carrico was on the list to receive mental health treatment. And Payne, as non-medical jail staff, was entitled to rely on Colley's medical judgment "concerning the course of treatment for [Carrico] at that time." *Harris v. Redd*, No. 7:23-cv-00648, 2024 WL 4490870, at *3 (W.D. Va. Oct. 15, 2024) (citing *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995)).

In alleging that Payne "threatened" her with harassment charges if she did not refrain from submitting written requests, Carrico asserts what appears to be a First Amendment retaliation claim. But as courts within this circuit have noted, "a retaliation claim fails if there is a legitimate reason for the alleged retaliatory action." *Kennan v. Squire*, No. 9:23-cv-01213, 2024 WL 5507521, at *15 (D.S.C. Nov. 8, 2024) (citing *Canter v. Maryland*, No. CV ELH-22-

- 10 -

2267, 2023 WL 5804285, at *17 (D. Md. Sept. 6, 2023)), *report and recommendation adopted*, 2025 WL 750255 (D.S.C. Mar. 10, 2025). And based on the facts Carrico alleges, Payne had a legitimate reason to discourage Carrico from submitting further requests as they were duplicative and would not result in her receiving expedited mental health treatment. *See Collins v. Riddell*, No. 8:18-cv-01580, 2019 WL 3719490, at *8 n.9 (D.S.C. July 2, 2019) (finding no actionable retaliation claim where restrictions on a pretrial detainee's "ability to place sick calls and file grievances . . . were a response to [the detainee's] abusing the kiosk system by filing multiple requests per day and filing grievances concerning issues that had already been addressed"), *report and recommendation adopted*, 2019 WL 3717987 (D.S.C. Aug. 7, 2019). Accordingly, Carrico's claims against Payne will be dismissed.[7]

## IV.    CONCLUSION

For the reasons stated above, the court will grant the Moving Defendants' motion to dismiss. Only Carrico's claims against Coen remain.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 17th day of June, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] Having dismissed Carrico's claims against the Moving Defendants, the court need not—and will not—address their separate qualified immunity argument.

- 11 -